IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RACHEL Y. SELF,                                        No. 2:12-cv-1416-CMK

             Plaintiff,

      vs.                                        <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

_____/

            Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 20).  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on April 3, 2007, alleging an onset of disability on July 1, 2003, due to disabilities including carpal tunnel, plantar fasciitis in right foot, and bulging discs (Certified administrative record ("CAR") 92, 169-70, 212-13).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on June 11, 2009 with a supplemental hearing on March 24, 2010, before Administrative Law Judge ("ALJ") Peter F. Belli.  In a May 12, 2010, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1.      The claimant last met the insured status requirements of the Social Security Act on March 31, 2007.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 1, 2003 through her date last insured of March 31, 2007 (20 CFR 404.1571 *et seq.*).

3.      Through the date last insured, the claimant had the following severe impairments:  right plantar fasciitis, right tarsal tunnel syndrome, degenerative disc disease of the lumbosacral spine, lumbar strain, mild obesity, and depression (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is precluded from prolonged standing/walking.  She is unable to use her right lower extremity to manipulate foot controls.  She is precluded from climbing ladders, ropes, or scaffolds.  She may occasionally climb ramps and stair, and occasionally stoop, kneel, crouch, and crawl. She is unlimited in her ability to understand, remember, and carry out short, simple instructions; but she is moderately limited [FN1] in her ability to understand, remember, and carry out detailed instructions.  The claimant is unlimited in her ability to make judgments on simple decisions, but slightly limited [FN2] in the ability to make judgments on detailed decisions.  The claimant is slightly limited in her ability to interact appropriately with supervisors, co-workers, and the public.  She is moderately limited in her ability to respond appropriately to changes in a routine work setting, and in her ability to respond appropriately to work pressures in a usual work setting.

        [FN1:  Moderately limited is defined as greater than mildly limited and less than markedly limited, but still able to function satisfactorily in this area.]
        [FN2: Slightly limited is defined as mild limitations in this area, but generally functions well.]

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

7.    The claimant was born on May 13, 1975 and was 31 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Throught the date last insured, considering the claimant's age, education, work experience, and residual funcational capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from July 1, 2003, the alleged onset date, through March 31, 2007, the date last insured (20 CFR 404.1520(g)).

(CAR 11-25). After the Appeals Council declined review on March 30, 2012, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative

4

findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways: (1) the ALJ improperly determined her severe impairments at step two; and (2) the ALJ failed to properly credit plaintiff's testimony as well as third party statements.

### A.    SEVERE IMPAIRMENTS

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

---

[3]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

impairment by providing medical evidence consisting of signs, symptoms, and laboratory

findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

is insufficient.  See id.

        Here, the ALJ found plaintiff's severe impairments consisted of right plantar

fasciitis, right tarsal tunnel syndrome, degenerative disc disease of the lumbosacral spine, lumbar

strain, mild obesity and depression.  He found plaintiff had other impairments, including carpal

tunnel and migraine headaches, but that these impairments were non-severe.  Specifically, the

ALJ found plaintiff's "headaches are not experienced at such a frequency or degree as to limit

her ability to perform work-related activities." (CAR 13).  The ALJ noted that plaintiff briefly

underwent treatment in 2006 and was prescribed migraine medication, but "no source assessed

any work-related functional limitations related to this disorder, and no limitations are warranted

by the record."  (CAR 14).  Similarly, the ALJ noted plaintiff's alleged limitations in the use of

her hands due to carpal tunnel syndrome.  The ALJ found plaintiff underwent treatment in 1998-

99 with significant improvement, that plaintiff did not seek any additional treatment for carpal

tunnel syndrome after 1999, there were "no objective findings of positive Tinel's or Phalen's

related to the Carpal tunnel syndrom during the period at issue[,]" including during the

examinations and assessments by her treating physician, "no source documented significant

findings in connection with carpal tunnel syndrom and no one assessed work-related functional

limitations," and plaintiff's daily activities suggest "normal functioning of the upper extremities."

(CAR 14).

        Plaintiff argues that her treating physician, Dr. Adishian, precluded her from

repetitive work in 1999, and the more recent medical records were from her workers'

compensation doctors who would not have treated her carpal tunnel issues as that was not her

workers' compensation injury.  She also argues that she testified to continuing symptoms related

to her carpal tunnel syndrom.  In addition, she contends that the ALJ acknowledged that she

received treatment for her migraine headaches, and that both she and her witnesses testified to the severity of her headaches.  Further, she argues the lack of objective medical evidence to support her headaches does not indicate the absence of them.  Thus, she contends the ALJ should not have found these ailments non-severe and should have included the combined effect of these impairments in addition to the other impairments the ALJ found severe.

As stated above, the burden is on the plaintiff to establish the severity of her impairment by providing appropriate medical evidence.  Her own testimony of symptoms alone is insufficient.  Yet, here, plaintiff contends that based on her testimony, the ALJ should have found her carpal tunnel and migraine headaches severe impairments.  As the defense points out, and the ALJ stated, there have been no objective findings on examination to support such a finding, and no treating or examining physician has found any limitations with her upper extremities.  A diagnosis in 1999 of carpal tunnel, which was successfully treated prior to plaintiff's alleged onset of disability in 2003, is simply insufficient to support a finding that the ALJ erred in determining this as a non-severe impairment.  Plaintiff fails to support her contention that she continues to have symptoms with any medical evidence during the relevant time period.

Similarly, plaintiff fails to support her contention that her migraine headaches cause more than minimal limitations without any medical evidence.  As the ALJ set forth, the medical records indicate that she sought treatment in 2002 for chronic headaches and migraines, and then again in 2006.  However, she was prescribed medication and had no further complaints.  In her motion, plaintiff fails to point to anything but her own testimony to support her contention that her migraine headaches are severe, with the exception of 2002 MRI which showed no abnormality and the 2006 treatment note where she was prescribed medication, which the ALJ noted.

The undersigned finds that plaintiff failed to meet her burden in demonstrating that her carpal tunnel syndrome and migraine headaches are sufficiently severe to limit her ability

1  to do basic work activities.  The undersigned cannot find the ALJ erred in his determination of

2  the severity of plaintiff's impairments; that determination is supported by the evidence and will

3  not be disturbed.

4                    **B.    PLAINTIFF'S CREDIBILITY**

5          The Commissioner determines whether a disability applicant is credible, and the

6  court defers to the Commissioner's discretion if the Commissioner used the proper process and

7  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

8  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

9  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

10  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

11  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

12  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

13  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

14  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

15  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

16          If there is objective medical evidence of an underlying impairment, the

17  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

18  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

19  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

20                    The claimant need not produce objective medical evidence of the
                    [symptom] itself, or the severity thereof.  Nor must the claimant produce
21                    objective medical evidence of the causal relationship between the
                    medically determinable impairment and the symptom.  By requiring that
22                    the medical impairment "could reasonably be expected to produce" pain or
                    another symptom, the Cotton test requires only that the causal relationship
23                    be a reasonable inference, not a medically proven phenomenon.

24  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

25  F.2d 1403 (9th Cir. 1986)).

26  / / /

1    The Commissioner may, however, consider the nature of the symptoms alleged,

2  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

3  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

4  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

5  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

6  prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

7  physician and third-party testimony about the nature, severity, and effect of symptoms.  See

8  Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

9  claimant cooperated during physical examinations or provided conflicting statements concerning

10  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

11  claimant testifies as to symptoms greater than would normally be produced by a given

12  impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

13  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14    Here, the ALJ determined that plaintiff's "subjective pain complaints and her

15  allegations regarding limitations in standing, walking, and lifting are generally credible."  (CAR

16  20).  However, he found that plaintiff's

17    allegations regarding limitations related to carpal tunnel syndrome
   and migraine headaches are not credible for the reasons noted
18    earlier in the decision.  Specifically, the claimant alleged
   manipulative limitations related to carpal tunnel syndrome, and
19    frequent absences and the need to lie down due to migraines, but
   these limitations are not supported by the objective evidence, the
20    treatment records, the claimant's generally good functioning, or
   any opinion evidence of record.  Thus, these limitations are
21    rejected.

22  (CAR 21).

23    In discussing plaintiff's impairments, the ALJ stated:

24    In addition to the lack of carpal tunnel syndrome complaints,
   findings or limitations during the period at issue, the claimant's
25    activities of daily living also suggest that the claimant has normal
   functioning of the upper extremities.  Despite the claimant's
26    allegations of pain with repetitive action of the hands, the record

9

1    shows that her hobbies and activities included crocheting, painting,
     frequently working on crafts, and playing board games.  These
2    activities often require prolonged or repetitive use of the upper
     extremities.  In addition, the claimant also did many normal
3    household chores, and was limited in this area primarily due to her
     lower extremity impairments (Exhibits 4E, 6F, 32F).  For all of the
4    reasons, the claimant's allegations regarding limitations related to
     carpal tunnel syndrome are not credible.
5    (CAR 14).

6          Plaintiff argues the ALJ erred in his credibility determination because he failed to

7    accurately characterize her statements regarding her activities of daily living as well as her

8    testimony.  She claims she consistently reported that her hands hurt when doing those activities,

9    and she was more limited in what she could do.  In addition, she argues the record supports her

10   allegations regarding her migraine headaches including her need to lie down and miss work.

11   Plaintiff contends the ALJ failed to provide legitimate reasons for discounting her testimony,

12   much less clear and convincing reasons for doing so.

13          Contrary to plaintiff's argument, the ALJ set forth several clear and convincing

14   reasons for discrediting her testimony.  The ALJ specifically found not only a lack of objective

15   medical evidence supported her claims, but also found her daily activities inconsistent with her

16   allegations of limitations.  He appropriately considered plaintiff's alleged symptoms, the

17   treatment she sought and received, as well as her daily activities.  His findings are supported by

18   the record.  For example, plaintiff reported in 2007 that while it took her a bit longer, she was

19   able to cook, clean the house, take care of her personal needs, and do her crafts. (CAR 204-11).

20   In addition, plaintiff testified that she did not generally seek medical treatment for her migraine

21   headaches, but used over the counter medication.  (CAR 45).

22          The court finds the reasons the ALJ set forth for discrediting plaintiff's testimony

23   as to her carpal tunnel syndrome and migraine headaches are clear and convincing, and are

24   supported the record as a whole.  Giving the ALJ's opinion the proper deference it is entitled, the

25   undersigned cannot find the determination was erroneous.  See Fair, 885 F.2d at 604.

26

### D.  THIRD PARTY STATEMENTS

1

2        Similarly, plaintiff contends the ALJ improperly discredited the statements of her

3  husband and friend regarding her limitations.  "[L]ay witness testimony as to a claimant's

4  symptoms or how an impairment affects ability to work is competent evidence, and therefore

5  cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.

6  1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family

7  members in a position to observe a plaintiff's symptoms and daily activities are competent to

8  testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must

9  give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919; see also Stout v.

10  Commissioner SSA, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss

11  competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless

12  it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have

13  reached different disability determination).

14        The ALJ, however, need not discuss all evidence presented.  See Vincent on

15  Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain

16  why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700,

17  706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence

18  which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating

19  psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

20  uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

21  controverted by other medical evidence considered in the decision.  See id.  As to lay witness

22  testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

23  concluded that the evidence was properly ignored because it "conflicted with the available

24  medical evidence" assessing the plaintiff's mental capacity.  Id.

25        In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent

26  disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness

had testified about the plaintiff's "inability to deal with the demands of work" due to alleged

back pain and mental impairments.  Id.   The witnesses, who were former co-workers testified

about the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.

Noting that the lay witness testimony in question was "consistent with medical evidence," the

court in Stout concluded that the "ALJ was required to consider and comment upon the

uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to

work."  Id. at 1053.   The Commissioner conceded that the ALJ's silent disregard of the lay

testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth

Circuit rejected the Commissioner's request that the error be disregarded as harmless.  See id. at

1054-55.  The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay
> testimony, and because we conclude that error was not harmless,
> substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony

depends on whether the testimony in question is controverted or consistent with the medical

evidence.  If it is controverted, then the ALJ does not err by ignoring it.  See Vincent, 739 F.2d at

1395.  If lay witness testimony is consistent with the medical evidence, then the ALJ must

consider and comment upon it.  See Stout, 454 F.3d at 1053.

Here, plaintiff contends her husband's statements regarding her manipulative

limitations and her friend's statements regarding her migraine headaches support her contention

that these are severe limitations and the ALJ erred in rejecting the statements without germane

reasons.  Plaintiff's husband noted in his statement that she has to rest her foot and hands during

cleaning, her feet and hands fall asleep at night, she could not write or type, and she must rest at

crafts. (CAR 196-203).  Plaintiff's friend stated that plaintiff suffers migraine headaches which

stop her from doing anything, and put her to bed for days at a time.  (CAR 231).

In regards to the lay witness statements, the ALJ found that:

1     the third party statements from the claimant's husband and the
2     claimant's friend, Marian Glenn, are also generally credible and
consistent with the finding that the claimant is limited to no more
than sedentary work.  Thus, these assessments are given significant
3     weight.  The statement by the clamant's sister, Paula Klem, is also
generally credible except that she indicated that the claimant could
4     not sit for prolonged periods.  This limitation was not alleged by
the claimant and not supported by any objective evidence or
5     opinion evidence of record.  Thus, the allegation is not credible.  It
is noted that Ms. Klem provided her statement in June 2009, well
6     after the date last insured, and thus, may have been referring to the
claimant's current functioning rather than her functioning during
7     the period at issue.  (CAR 21).

8         By this statement, the  ALJ basically found the statements by the witnesses

9 credible to the extent they are supported by the medical evidence, and silently rejected those

10 statements which were controverted by the medical evidence.  As discussed above, the medical

11 evidence in the record controverts her contention that her carpal tunnel syndrome and migraine

12 headaches are severe impairments.  As such, the statements by these lay witnesses are similarly

13 contradicted by the medical evidence, and the ALJ's failure to specially address those statements

14 is not reversible error.  See Vincent, 739 F.2d at 1395.

## IV.  CONCLUSION

16         Based on the foregoing, the court concludes that the Commissioner's final

17 decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

18 ORDERED that:

19         1.     Plaintiff's motion for summary judgment (Doc. 17) is denied;

20         2.     Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

21         3.     The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 21, 2014

                                    Craig M. Kellison
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE